UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH I. MUNDO, | ) | CIVIL ACTION NO. 1:21-CV-517 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social* | ) | |
| *Security* | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff, Sarah Mundo ("Mundo"), seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to have a Magistrate Judge conduct all proceedings in this case. (Doc. 10).

After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case will be REMANDED to the Commissioner for further proceedings.

## II.     BACKGROUND AND PROCEDURAL HISTORY

On June 14, 2018, Mundo protectively filed[1] an application for disability insurance benefits. (Admin. Tr. 35; Doc. 15-2, p. 36). Mundo also filed an application for supplemental security income on August 7, 2018. *Id.* In each application, Mundo alleged that she has been disabled since April 6, 2018. *Id*. After the Commissioner denied her claim at the initial level of administrative review, Mundo requested an administrative hearing. *Id*. On August 29, 2019, Mundo, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Daniel Balutis. (Admin. Tr. 35, 46; Doc. 15-2, pp. 36, 47).

The ALJ determined that Mundo had not been disabled from April 6, 2018 (the alleged onset date), through October 15, 2019 (the date of the decision). *Id*. And so, he denied Mundo benefits. *Id*. Mundo appealed the ALJ's decision to the Appeals Council, which denied her request for review on January 26, 2021. (Admin. Tr. 1–3; Doc. 15-2, p. 2-4). This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On March 22, 2021, Mundo, through counsel, began this action by filing a complaint requesting review of the Commissioner's decision. (Doc. 1).

---

[1]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

The Commissioner filed an answer and a certified transcript of the administrative proceedings. (Docs. 14, 15). This case was assigned directly to a Magistrate Judge, and the parties consented to have a Magistrate Judge conduct all proceedings in this case. (Doc. 10). Plaintiff's brief (Doc. 16), the Commissioner's brief (Doc. 19), and Plaintiff's reply (Doc. 21) have been filed. This matter is ripe for decision.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the standards relevant to the resolution of the specific issues Plaintiff raises in this case.

### A. SUBSTANTIAL EVIDENCE REVIEW—THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner."[2] But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings.[3] "[T]he threshold for such evidentiary sufficiency is not high."[4] Substantial evidence "means—and

---

[2] *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

[4] *Biestek*, 139 S. Ct. at 1154.

means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[5]

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla."[6] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[7] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence."[8] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[9]

The question before this court, therefore, is not whether Mundo was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

---

[5] *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

[6] *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[9] *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003)

### B. INITIAL BURDENS OF PROOF, PERSUASION, AND ARTICULATION FOR THE ALJ

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy.[11]

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[12] Unlike with disability insurance benefits under Title II of the Social

---

[10] 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

[11] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

[12] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. §

Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[13] Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income."[14]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled.[15] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC").[16]

---

416(i)(2)). Here, the ALJ determined that Mundo met the insured-status requirements through June 30, 2019. (Admin. Tr. 38; Doc. 15-2, p. 39).

[13] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[14] *Id*.

[15] 20 C.F.R. §§ 404.1520(a), 416.920.

[16] 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC between steps three and four.[17] The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis.[19]

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process.[20] But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity."[21]

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests.[22] "The ALJ must indicate

---

[17] *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).

[18] *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[19] 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

[20] *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).

[21] *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

[22] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[23] The "ALJ may not reject pertinent or probative evidence without explanation."[24] Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'"[25]

### C. STANDARDS GOVERNING THE ALJ'S EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

The Commissioner's regulations carefully define the sources and types of statements that can be considered "medical opinions."[26] The regulations also recognize another type of statement that does not meet the strict definition of medical opinion, but is nonetheless evaluated under the same framework. This type of statement is called a "prior administrative medical finding" and is, in layman's terms, a state agency consultant's medical opinion.[27]

The regulatory framework for evaluating the persuasiveness of medical opinions and prior administrative medical findings includes both factors to guide the

---

[23] *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).

[24] *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).

[25] *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

[26] 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 416.902(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 416.913(a)(2) (defining the types of statements that are medical opinions).

[27] 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding); 20 C.F.R. § 416.913(a)(5) (defining prior administrative medical finding).

analysis, and very specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of the persuasiveness of competing medical opinions and prior administrative medical findings is guided by the following factors:

(1)    the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2)    the extent to which the medical source's opinion is consistent with the record as a whole (consistency);

(3)    length of the treatment relationship between the claimant and the medical source;

(4)    the frequency of examination;

(5)    the purpose of the treatment relationship;

(6)    the extent of the treatment relationship;

(7)    the examining relationship;

(8)    the specialization of the medical source; and

(9)    any other factors that tend to support or contradict the opinion.[28]

---

[28] 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[29] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions and prior administrative medical findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[30]

The Commissioner's regulations also provide several "articulation" requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding.[31] Second, the ALJ is only required to articulate how he or she considered the other factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[32] Third, if one medical source submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[33] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered

---

[29] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[30] 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

[31] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[32] 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3).

[33] 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

based on the 20 C.F.R. §§ 404.1520c and 416.920c factors.[34] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[35]

### D.   GUIDELINES FOR EVALUATING WHETHER A HAND-HELD ASSISTIVE DEVICE IS MEDICALLY REQUIRED

"Cases considering a claimant's use of a walker or assistive device to ambulate aptly illustrate the importance of the ALJ's duty to clearly articulate the rationale for a decision denying disability benefits."[36] "[A] claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis," and in some circumstances can be outcome determinative.[37] For this reason, the Commissioner published a Social Security Ruling that addresses this issue in the context of sedentary work.[38] Courts use the framework set out in SSR 96-9p as a guide for evaluating cane use even where a claimant was limited to a more demanding exertional capacity.

---

[34] 20 C.F.R. § 404.1520c(d); 20 C.F.R. § 416.920c(d).

[35] 20 C.F.R. § 404.1520b(c); 20 C.F.R. § 416.920b(c).

[36] *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023).

[37] *Id.*

[38] *See* SSR 96-9p, 1996 WL 374185.

First, and ALJ need not account for use of a hand-held assistive device in an

RFC assessment unless that device is medically required. Pursuant to SSR 96-9p:

> To find that a hand-held assistive device is medically required, there
> must be medical documentation establishing the need for a hand-held
> assistive device to aid in walking or standing, and describing the
> circumstances for which it is needed (i.e., whether all the time,
> periodically, or only in certain situations; distance and terrain; and any
> other relevant information). The adjudicator must always consider the
> particular facts of a case. For example, if a medically required hand-
> held assistive device is needed only for prolonged ambulation, walking
> on uneven terrain, or ascending or descending slopes, the unskilled
> sedentary occupational base will not ordinarily be eroded.[39]

A claimant's testimony that a cane has been prescribed is not enough to meet this

burden.[40] An incomplete showing is also not sufficient.[41]

---

[39] 1996 WL 374185, at *7.

[40] *See Williams v. Colvin,* No. 3:13-CV-2158, 2014 WL 4918469, at *10-11 (M.D.
Pa. Sept. 30, 2014) (finding that a claimant's testimony about use of a cane did not
satisfy SSR 96-9p's direction that "medical documentation" is required to show
medical necessity); *Dyer v. Colvin,* No. 3:14-CV-1962, 2015 WL 3953135, at *18
(M.D. Pa. June 29, 2015) (finding that a claimant's testimony that a cane was
prescribed by a Certified Physician Assistant and objective records noting that the
claimant was using a cane are insufficient to show medical necessity under SSR 96-
9p); and *Schade v. Colvin*, 13-1071, 2014 WL 320133, at *8-9 (W.D. Pa. Jan. 29,
2014) (finding an ALJ did not err by excluding cane use from an RFC assessment
where there was no medical documentation establishing the need for a hand-held
assistive device).

[41] *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding that a doctor's
reference to a "script" for a cane and the doctor's opinion that a cane was medically
necessary for ambulation were insufficient medical evidence of the claimant's need
for a cane because the doctor's opinion did not further discuss the medical necessity
of the cane).

Once a claimant makes this showing, "then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device."[42]

Moreover, the failure to do so may require a remand. *Id.* Likewise, when the evidence indicates that the use of a walker is medically required and a vocational expert testifies that the plaintiff's use of an assistive device would render her unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony, and the case should be remanded. *Altomare v. Barnhart*, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005). In short, where substantial evidence indicates that there is a medical need for a claimant to use a walker or assistive device, and a vocational expert testified that such use significantly erodes the employment base for a claimant, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. *See e.g.*, *Graver v. Colvin*, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); *Butler v. Astrue*, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012).[43]

## IV. DISCUSSION

Mundo presents two claims in her statement of errors:

1. The ALJ erred by failing to make findings regarding Plaintiff's need for an assistive device.

2. The decision in this case, by an ALJ and Appeals Council AAJ deriving their authority from the Commissioner who was not constitutionally appointed, is constitutionally defective, requiring remand.

(Doc. 16, p. 1).

---

[42] *Figueroa*, 2023 WL 2432909, at *10 (quoting *Steward v. Comm'r of Soc. Sec.*, No. 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)).

[43] *Figueroa*, 2023 WL 2432909, at *10.

We will begin our analysis by summarizing the ALJ's findings in his decision. Then, we will address Plaintiff's first argument. Because we find that this argument is a basis for remand, we decline to address Plaintiff's allegation that the final decision in this case is constitutionally defective.

A.    THE ALJ'S DECISION DENYING MUNDO'S APPLICATIONS

On October 15, 2019, the ALJ denied Mundo's claims for benefits. (Admin. Tr. 35-46; Doc. 15-2, pp. 36-47). At step one of the sequential-evaluation process, the ALJ found that Mundo had not engaged in substantial gainful activity since April 6, 2018, her alleged onset date. *Id.*

At step two of the sequential-evaluation process, the ALJ found that Mundo had the following severe impairments: major depressive disorder, panic disorder, and chronic low back pain. *Id.* The ALJ also found that Mundo had the following impairments, which the ALJ determined were non-severe: chronic obstructive pulmonary disease, post-traumatic stress disorder, pancreatitis, diabetes mellitus, hypertension, urinary tract infection, obesity, hypokalemia, and hypomagnesemia. *Id.* The ALJ determined that, though Mundo has alleged neuropathy in her feet, Mundo's neuropathy is not medically-determinable in this case. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Mundo did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* More

specifically, the ALJ discussed Listings 12.04[44] and 12.06, and he determined that Mundo did not meet any of those listings. *Id*. In connection with his discussion of listings 12.04 and 12.06—mental health listings—the ALJ concluded that Mundo had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing herself. (Admin. Tr. 39-40; Doc. 15-2, pp. 40-41).

The ALJ then determined that Mundo has the RFC to perform light work with some non-exertional limitations. (Admin. Tr. 40; Doc. 15-2, p. 41). The ALJ determined that Mundo is limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds and limited to occasional kneeling, crouching, and crawling. *Id*. Mundo can frequently balance and stoop. *Id.* She "is able to perform simple, routine and repetitive tasks but not at a production rate pace such as assembly line work." *Id*. The ALJ further stated: "In consideration of [Mundo's] concentration issues, her time off task could be accommodated by normal breaks." *Id*. In making this RFC assessment, the ALJ reviewed Mundo's assertions and testimony; her treatment

---

[44] In his decision, the ALJ stated that he considered listings "1.04" and 12.06. *Admin. Tr.* at 38. Because listing 12.04 involves depressive disorders, which the ALJ identified as a severe, medically-determinable impairment at Step Two, and because no listing exists at 1.04, we have assumed that the ALJ meant listing 12.04.

records; her activities of daily living; and the medical opinion evidence. (Admin. Tr. 40-43; Doc. 15-2, pp. 41-44).

At step four of the sequential-evaluation process, the ALJ found that Mundo is unable to do her past relevant work as a home health aide (DOT# 354.377-014), which is semi-skilled work, generally performed at a medium exertional level but which was actually performed at the very heavy exertional level. (Admin. Tr. 44; Doc. 15-2, p. 45).

At step five of the sequential-evaluation process, considering Mundo's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs that exist in significant numbers in the national economy that Mundo could perform, including folder (DOT# 789.687-066), sorter (DOT# 222.687-014), and assembler (DOT# 706.684-022), each with at least 230,000 jobs in the national economy. (Admin. Tr. 45; Doc. 15-2, p. 46).

In sum, the ALJ concluded that Mundo was not disabled from April 6, 2018, through the date of his decision on October 15, 2019. (Admin. Tr. 46; Doc. 15-2, p. 47). Thus, the ALJ denied Mundo's claims for disability insurance benefits and supplemental security income. *Id.*

### B.   THE ALJ DID NOT ADEQUATELY EXPLAIN WHY DR. CHOUDRY'S OPINION WAS FOUND NOT PERSUASIVE AND DID NOT ADEQUATELY EXPLAIN WHY A HAND-HELD ASSISTIVE DEVICE WAS NOT REQUIRED

On October 5, 2018, consultative examiner Abaid Choudry, M.D. met with

Mundo, examined her, and issued a medical source statement. In his examination

report, Dr. Choudry observed that Mundo:

> walks with a slow, limping gait. Declines to walk on heels and toes.
> Declines to squat. She uses a cane for ambulation. Stance normal. With
> the cane, she has less limping in her gait. Needed no help changing for
> exam or getting on and off exam table. Able to rise from chair without
> difficulty.

(Admin. Tr. 892; Doc. 15-13, p. 63). He also noted that Mundo had decreased

sensation in her left leg from the knee down, and that strength in the left leg was

4+/5. (Admin. Tr. 893; Doc. 15-13, p. 64). Based on these observations, Dr. Choudry

assessed, in relevant part, that Mundo could: occasionally lift or carry up to one

hundred pounds; frequently carry up to twenty pounds; sit up to five hours per eight-

hour workday; stand up to four hours per eight-hour workday; and walk up to three

hours per eight-hour workday. (Admin. Tr. 894-899; Doc. 15-13, pp. 65-70). He also

assessed that Mundo required the use of a cane to ambulate, that Mundo could

ambulate only for one block without the use of a cane because she would become

unsteady, that the cane was medically necessary, and that Mundo could use her free

hand to carry small objects while using the cane. *Id.*

On December 14, 2018, state agency consultant Louis Tedesco, M.D. issued a prior administrative medical finding in which he concluded, in relevant part, that Mundo could: occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and/or walk for a total of six hours per eight-hour workday; and sit for a total of six hours per eight-hour workday. (Admin. Tr. 135-137; Doc. 15-4, pp. 28-30). At the conclusion of his assessment, Dr. Tedesco remarked that Dr. Choudry's opinion was an "overestimate of limitations" and included an evaluation of "impairments the provider did not [treat]." (Admin. Tr. 136; Doc. 15-4, p. 29).

In his decision, the ALJ also did not put much stock in Dr. Choudry's assessment, but not because it was an "overestimate of limitations." In fact, the ALJ found Dr. Choudry's opinion was unpersuasive because "[t]he overall objective medical evidence of record supports *more* limitations than originally determined." (Admin. Tr. 43; Doc. 15-2, p. 44). The ALJ then limited Mundo to an RFC of light work, which would require her to stand and walk for up to six hours per workday *without a cane*. While this explanation makes sense in terms of Dr. Choudry's lifting and carrying limitations, it does not explain why the standing, walking and cane use limitations—all more limited than the ALJ's RFC assessment—were rejected.

In August 2019, after both medical opinions were issued, Mundo was apparently prescribed a walker. (Admin. Tr. 61-62; Doc. 15-3, pp. 11-12). That prescription does not appear in the record.

Mundo argues that she has met her burden of showing that her hand-held assistive device—a cane—was medically required, and that the ALJ's failure to explain why that limitation was excluded from the RFC assessment requires remand.

In response, the Commissioner argues that the ALJ acknowledged Dr. Choudry's opinion that Mundo required a cane for walking more than one block, and that this cane was medically necessary. The Commissioner also contends that the ALJ acknowledged Mundo's testimony about the walker. She also suggests that ample evidence supports the ALJ's assessment and that it is enough that the "ALJ stated that he 'read and considered all the evidence of record, regardless of whether or not there are specific citations to it in the decision." (Doc. 19, p. 38). We are not persuaded.

At the outset, the only medical evidence in this case that supports the cane use limitation is Dr. Choudry's opinion. This evidence was discounted. However, upon review, we find that the ALJ's decision to do so was not adequately explained. In his decision, the ALJ addressed Dr. Choudry's opinion as follows:

> At the request of the Disability Determination Service, Dr. Abaid Choudry conducted a consultative evaluation of the claimant on October 5, 2018 (Exhibit B8F). Upon physical examination, Dr. Choudry found a slow, limping gait. The claimant used a cane to ambulate, with less limping. Straight leg raising was negative bilaterally, seated and supine. While Dr. Choudry noted decreased sensation to light touch and pinprick in the left leg from the knee down, strength was 4+/5 in the left leg and normal in the left leg. Dr. Choudry indicated that the claimant had difficulty zipping, buttoning and tying. His diagnoses included diabetes mellitus, hypertension, history of

coronary artery disease, post-traumatic stress disorder, chronic obstructive pulmonary disease, lumbar radiculopathy and left knee pain. In a medical statement, Dr. Choudry opined that the claimant could lift and carry up to 100 pounds occasionally, 20 pounds frequently. The claimant could sit for 4 hours at a time, up to 5 hours in an 8-hour day, stand for 3 hours at a time, up to 4 hours in an 8-hour day and walk for 1 hour at a time, up to 3 hours in an 8-hour day. The claimant requires a cane to ambulate. The claimant should never handle with the left hand, never climb ladders or scaffolds and must avoid exposure to dust, fumes, odors and pulmonary irritants.

. . . .

The undersigned Administrative Law Judge finds the opinion of Dr. Choudry (Exhibit B8F) is not persuasive (Exhibit B8F) because he was relying solely and exclusively on one observation made on the day of the examination and not upon objective long-term observations and examinations of the claimant. The overall objective medical evidence of record supports more limitations than originally determined.

(Admin. Tr. 42, 43; Doc. 15-2, pp. 43, 44).

Although the Commissioner takes a different view, we find the ALJ appears to support his decision to discount Dr. Choudry's opinion based solely on the nature of the relationship between Mundo and Choudry—that Choudry is an examining source who saw Mundo one time before issuing an opinion.[45] The regulations, however, require that an ALJ "explain how [he or she] considered the supportability

---

[45] The Commissioner argues that Dr. Choudry's rationale was an analysis of the supportability of the opinion. However, the supportability factor concerns the relevancy of the objective medical evidence and supporting explanations presented by a source. 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). The ALJ did not discuss Dr. Choudry's clinical observations or the explanations provided in his opinion or narrative report in his articulation of why the opinion was found not persuasive.

and consistency factors" in the decision.[46] The ALJ in this case did not adequately address those factors.

Although an ALJ is not required to address every limitation in every opinion, he should address limitations that are relevant and potentially outcome determinative. Given the potential impact of the use of a hand-held assistive device on the RFC in this case, we also find that on remand the ALJ should address this limitation by making a finding as to whether Mundo has presented enough persuasive evidence to show that the device is medically required.

Because we have found a clear basis for remand, we need not address the merits of Mundo's remaining argument.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner will be vacated and the case remanded for further proceedings consistent with this memorandum opinion.  An appropriate order follows.

Date: March 24, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge

---

[46] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).